

U.S. COURT ...
RECEIVED
CLERK

AUG 0 2 2023

ATLANTA, GA

The Contents of a Brief are set out in
11th Cir. Rules 30-1 and 30-2.

NO. 23-11375-Q

David J. Smith
**Clerk of Court**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

**DENISE SNEED SAVAGE, et. al., versus GLENMARK PHARMCEUTICALS, INC.SA,
MARLENE GOLDENBER
APOTEX CORP
MICHAEL MCCANDLESS
BRAD ALDRIDGE et. al.,**

## ELBERT PARR TUTTLE COURT OF APPEALS BUILDING

### 56 Forsyth Street, N.W.

### Atlanta Georgia 30303

July 29, 2023 26, 2023
Appeal Number: 23-11375-Q
 Case Style: Glenmark Pharmaceuticals, Inc. USA et.al. v. Denise
Savage, et al.,
 District Court Docket No: 9: 20-md-02924-RLR

NOTICE OF APPEAL FILED April 25, 2023

**Re: BRIEF**   Name of Counsel Dr. Denise Sneed Savage, CSC. ASP. AP. CSUPT.

Office Address of Counsel  270 Davie Smith Street
Roanoke Rapids N.C. 27870
Telephone # 1-252-535-4167 or 252-529-1085

**U.S. COURT OF APPEALS FOR THE ELEVENTH CIRCUIT**

**CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT (CIP)**

Denise Sneed Savage,et al.,    *vs.*  Glenmark Pharmaceuticals, INC. USA et al.,    Appeal No. 23-11375-Q

11th Cir. R. 26.1-1(a) requires the appellant or petitioner to file a Certificate of Interested Persons and Corporate Disclosure Statement (CIP) with this court within 14 days after the date the case or appeal is docketed in this court, and to include a CIP within every motion, petition, brief, answer, response, and reply filed. Also, all appellees, intervenors, respondents, and all other parties to the case or appeal must file a CIP within 28 days after the date the case or appeal is docketed in this court. **You may use this form to fulfill these requirements.** In alphabetical order, with one name per line, please list all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party. *(Please type or print legibly)*:

The Honorable Judge Robin RosenBurg

Glenmark Pharmaceuticals, INC, USA et al.,

Mr. Juluis Alton Sneed (victim)

Dr.. Denise Sneed Savage Roanoke Rapids NC.

Mr. Juiluis Sneed 11 Baltimore Maryland

Mr. Jules Sneed of Baltimore Maryland

John Hopkins Hosiptal

Crumps & Davis' Law firm

Submitted by:
Signature: Dr.Denise Sneed Savage
Name: Dr. Denise Sneed Savage et al., 2023    Prisoner # (if applicable):
Address: 270 Davie Smith Street Roanoke RapidS NC
Telephone #: 252-535-4167

Rev.: 2/23

Certificate of interested Persons and Corporate Disclosure  statement........................... C-1

Table of Contents............................................................................ ii

Table of Citations........................................................................... iii

Jurisdictional Statement Questions................................................. V

Statement Of the Issues................................................................ 2

Statement Of the Cases................................................................. 4

Argument..................................................................................... 6

Summary of Closing Arguments...................................................... 10

Iii

Table Of Citations

1. " Plaintiffs' Expedited Motion Objecting to Paragraph 7 of Pt0 79 and to clarify PT 0 15 and the definition of tolling" pg. 2

2. " mere puff " pg. 3

3. "Registry. "Id. pg. 4

4. "parties" pg. 5

5. " tumor microenvironmental " (Brian et. al., 2015). Pg. 7

6. https/www.dorzalexhcp.com/multiple myeloma. Pg. 9

ii

David J. Smith

Clerk of Court

APPEALS BUILDING

UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF

56 Forsyth Street N.W.
Atlanta Georgia 30303

June 15, 2023

From : Dr. Denise Sneed Savage, PhD. CSC.ASP. AP. SUPT.
270 DAVIE SMITH ST
ROANOKE RAPIDS, NC 27870

Appeal Number: 23-11375-Q
Case Style: Glenmark Pharmaceuticals, Inc. USA et.al. v. Denise Savage, et al.,
District Court No: 9: 20-md-02924-RLR

NOTICE OF APPEAL FILED April 25, 2023

Re:    JURISDICTIONAL QUESTIONS

1. Please address what order (s) or decision (s) the notice of appeal evidences an intent to appeal
   from. The three cases where filed and sent to your jurisdiction because the
   Honorable JUDGE ROBIN ROSENBURG refused to provide us a pro bono lawyer, or to
   acknowledge the detailed report that she requested. Notably, the report included Linking
   Zantac Ranitidine, Multiple Myeloma Cancers, and Crumps and Davis's law firm altogether.
   Importantly, our cases were never heard or placed on their docket. Importantly, according to
   an unidentified clerk, I was advised that a short form could be utilized for all cases (Savage et
   al., 2023). Additionally, our cases were closed with prejudice before the timeline closing date
   occurred.

2. Please also address the basis for this Courts' appellate jurisdiction to review the designated
   order (s) or decision (s), including whether the appellate has standings to appeal.
   The basis for this Courts' appellate shall provide a substantial amount of exhibits that were
   overlooked with prejudice. Notably, the evidence included a CD that Crumps and Davis Law
   firm had on file in June of 2022. The CD displayed detailed information clarifying how Mr.
   Julius Alton Sneed ingested prescribed Zantac medication for an ulcer for decades and also
   took over the counter Zantac as well (Sneed et al., 2023). Moreover, Mr. Julius Alton Sneed's
   death certificate provides evidence in exhibit (1) clarifying how he died from myeloma
   cancers. Additionally, I would like to motion that our cases are listened to because this is the
   second time that I paid to be placed on the Courts' docket. Your jurisdiction's consideration
   and fairness would be highly appreciated by ( Savage et al., 2023).

The following forms that you have requested shall be sent by email and paper,

Transferred from:                              UNITED STATES DISTRICT
COURT              District Court Docket MDL NO. 9:20-md-0294-RLR
Appeal Number; 2311375                              SOUTHERN
DISTRICT OF FLORIDA

IN RE: ZANTAC& MULTIPLE MYELOMA CANCERS

(RANIDINE &Glenmark Pharmaceuticals, Inc. USA et.al. CRUMPS &DAVIS' JUDGE
ROBIN L ROSENBERG

MAGISTRATE JUDGE BRUCE E  REINHART & New Judge

---

THIS DOCUMENT RELATES TO:  BRIEF FOR All CASES

ORDER GRANTING IN PART AND DENYING IN PART
THE CLAIMANTS' MOTION FOR CLARIFICATION OF PRETRIAL ORDER 15

In November, of 1891, Ms. Louis Carlill observed an engaged advertisement in a local

paper, *The Pall Mall Gazette, Carbolic Smoke Ball Co., (*1983) 1. Q. B. 256 (Court of Appeal).

In Addition, the advertisement was for a Carbolic smoke ball" which when squeezed, could

release inhalable vapors that, at least reported in the advertisement, it would eliminate a common

cold. Id2. Illustration viewing only of  1891 News Paper Advertisement.



## Statement of the Issues

Although the Motion is styled as "Plaintiffs' Expedited Motion Objecting to Paragraph 7 of PTO 79 and to Clarify PTO 15 and the Definition of "Tolling" the motion is actually implemented on behalf of Claimants. The Court prior denied treating the motion on an expedited basis at docket entry 5952 and advised the Claimants' claims. This carbolic smoke ball advertisement is viewable at https://en.wikipedia.org/carlill_v_ carbolic smoke _ ball_ co. Additionally, the Court's reference to the carbolic smoke ball co. The manufacture's guarantee of cold prevention was supported by a promise of compensation; if anyone contracted a cold after using a smoke ball, the manufacturer promised a payment of one hundred pounds. *Id.* After she contracted a cold, Ms. Carlill demanded that she be compensated for the one hundred pounds. *Id.* Ms Carlill filed a lawsuit. According to her trial results, the manufacturer provided several defenses,

several defenses, including that the advertisement was "mere puff" and how there was no

enforceable contract. *Id.* Importantly, the appellate court found that there was an enforceable

significant contract; the court also revealed detailed evidence that the Carbolic Smoke Ball

Company, had communicated an offer to Ms. Carlill via the *Gazette* and that Ms. Carlill had

accepted that offer through her purchase of the smoke ball. Id.

        Notably, in this multidistrict litigation ("MDL"), the Defendants, like the Carbolic Smoke

Ball Company, communicated an offer to individuals with a potential claim against them, this included

potential Claimants,3 Moreover, like Ms. Carlill , many victims accepted the manufacturers' offer.

Additionally, the carbolic smoke ball case , the Claimants now contest the terms of their agreement.

Nevertheless, the analogy ends with how the Claimants  seek to resolve their contract dispute.  In lieu of

suing the Defendants and litigating a breach of contract claims, as Ms. Carlill did, the Claimants ask this

Court to define the particulars of their agreement through a "Motion for Clarification". Importantly, this

would be as if Ms Carlill, requested the *Gazette* newspaper to "clarify" her agreement through a "Motion

for Clarification." This would be as if Ms. Carlill asked the *Gazette* newspaper to " clarify' her agreement

with the Carbolic Smoke Ball Company. Our father side effects were a cough, clasped lung, sleep

problems, pneumonia, upper respiratory infection, back pain and high blood pressure, chronic

heartburn.

        For the real reasons set forth in this Order, a motion for clarification is not the appropriate

avenue for a breach of contract disputes to be adjudicated. The appropriate resolution to be

considered compliant, motion practice, evidence, and teleconference potential jury trial.  Even

so, the Claimants' Motion for Clarifications, which the Court will describe in detail below, it

does link to some areas that the Court may clarify, such as the Courts' intent in managing this

MDL. For example, some of the Claimants' request for clarification are granted and some of the

request for clarifications were denied and some claimants' rights have been violated altogether. The Court organized this Order as follows.

## Statement of the Cases

First, the Court sets fort the factual and procedural background giving rise to the Motion for Clarification. Second, the Court addresses a request for clarification that was denied: the Claimants' request for the Court to independently define certain contract terms.  Third, the Court addressed a  request for clarification that was granted: the Court explained their intent in memorializing the Defendants' offer in a pretrial order and explains their case management decisions.  Fourth, the Court addressed an  argument in the Defendants' Response: that the parties' 4 resolved the definition of a contract's term in a prior agreement. Notably, fifth and finally, the Court indicated how any Claimant may seek relief from the Court, should the claimant assumption that he or she has been prejudiced as a result of the Court's management of the MDL.

1.    In addition, quickly after the inception of this MDL, the Court appointed leadership. **2.** Pretrial Orders 2, 4, 10. Among other things, the Court selected leadership to "formulate an initial census process to assist in overall effective case management and, the orderly with progression of this proceeding." Pretrial Order 15. The result of the Court's selection of the parties 'conferral, included the input of a special master, and extensive negotiations were "the Registry." *Id.*

The Registry is a database administered by a private litigation services company. *Id.* A **3.** the United States' clerks would not acknowledge my educational degree background which includes the following; Name Denise Sneed Savage PhD. CSC. SUPT. In addition, I have

requested for a change to be made numerous times with several clerks and staff, but was informed they would take care of it ,and the computer system could not make this change.

Moreover, I was only requesting that Dr. be placed in front of my name. However, I understand that they are very busy, but this procedure would have taken only two minutes. When an Africain American, or any culture go to school and earn a prestigious' degree, such as the following mentioned above. Importantly, it needs to be provided in their database regardless of the color of their skin. Notably, each time the individuals have reminded a formal scholar, how to change to electronic filing, but you can't put Dr. in the database. *Id.* 4 The Court used the term "parties" in this Order to refer to the Plaintiffs and the Defendants, collectively ; the Court did not use the term to refer to the Claimants. A Claimant , meaning anyone with a potential claim against the Defendants, may record his or her claim in the registry . Those Claimants and, the Plaintiffs registered approximately 150,000 claims during the pendency of this MDL. The Registry's data assisted the court with its administration of this MDL. For example, upon recording a claim in the Registry, a Claimant or Plaintiff must include certain information such as when he or she utilized a Defendant's product and what sort of cancer developed. Id. At Ex A. Therefore, together with other recorded information, the Registry is a useful resource to begin a careful selection of bellwether trials requires because the data in the Registry facilitates a selection from representative cross -section of claims (Savage et al., 2023). Another issue included a violation of the title VI Civil Rights Act of 1964, that requires no judge to discriminate against an individual because of their race, color, national origin, sex, disability, and age.

Importantly, this court utilized the Registry to choose cases for preliminary bellwether discovery in November of 2021. Pretrial Order 69. In addition, to providing benefits to the Court

in its administration of the MDL, the Registry confers benefits on the Defendants and the Claimants. Moreover, for the Defendants, any Claimants' claim recorded in the Registry was a claim that was not filed in court. The Registry therefore resulted in fewer cases for the Defendants to defend. Notably, with lesser cases to defend, the defendants were better equipped to focus on their defense of their defenses of this MDL. It is interesting to acknowledge that the Claimants, they too received benefits, including that any claim recorded in the registry was reported as statute of limitation purposes, tolled.5 **Crumps & Davis's Law Firm may have utilized Mr. Julius Alton Sneed's claim also.**

## Arguments For all Cases & Motions for each Case to be Considered for relief

Importantly, these illegal activities of tolling were the Defendants themselves. The Defendants agreed and consented to the tolling of claims which were recorded in the Registry. Pretrial Order 15 at 11. The core issue in this Motion for Clarification is the tolling, and the Court now briefly summarizes other benefits included that the Claimants were entitled to cost sharing when seeking medical records and other documentation. Pretrial Order 15 at 13. In addition, the Registry also served the goals of MDLs, generally: consolidation, coordination, and Conservation of judicial resources. There have been a history of tolling disputes in these MDL Cases (ID). Since my case was never heard and has been tolled in several ways. Please read this!

### . Linking Zantac and Multiple Myeloma, and Cancer

Mr. Julius Alton Sneed worked as a truck driver for over 25 years or more in Baltimore, Md. His employment was with **Browning Ferris Industry & Waste Management**. The landfill consisted of Hazardous Waste Management and an unhealthy severe working environment. We as children often went with him to work, but not knowing that those toxic chemical exposures

and rubber from different industries would impact our fathers' livelihood before death (Savage et al., 2023) Prior work employment was on the farm as a child in North Carolina.

### Arguments and Observations of Mr. Julius Alton Sneed's Body Deterioration

This included driving tractors (15ys) and sowing fertilizer that included toxic chemicals also (Savage et al., 2022). A history of working around **Toxic Chemical Exposures.** According to Brain et al.( 2015) indicated that an unhealthy working environment does cause multiple myeloma cancer. The deadly cancer disease has been existing in the United States since 1848. Throughout our fathers' workday, he would eat something fast like pizza or a steak sub and would develop excessive heartburn. In addition, our father never traveled or went to work without Zantac or Zantac Prescription drugs. We observed our father from 1981 to death. He ingested Zantac two times a day during the weekday and three times a day on weekends. The impact of Zantac included our father complaining " that his chest hurting and burning", and he was going to take a nap. (Savage et al, 1981 -2014); Sneed et al.1981-2015). He laid down and would get up later and eat a full balance meal but always took Zantac before eating and complained about his chest was hurting and burning. This occurred during our childhood and when he visited my family in North Carolina ( Savage et al.,2022; Sneed et. al., 2022).

Additionally, he would take a drink after returning home from work because he often was stressed from road rage among trash delivery stressors that were routed to the toxic landfills. Our father ingested Zantac from 1981 up until he departed Aug 19, 2014. He took Zantac over the counter and the doctor prescribed a higher dosage after he obtained Prostate Cancer, because medications do cause heartburn and his doctor suggested that a higher dosage would help eliminate some of his severe heart burn. The multiple myeloma cancers, developed to Bladder Cancer, liver cancer, Pancreas Cancer blood cancer, and Lung cancer and brain cancer. This

trauma occurred his final two years and it consisted of rapid Multiple Myeloma Cancers. He had

skin irritations with red spots on his back for years from the silent killer disease, that starts out

with one cancer cell which spreads throughout the entire body to the brain. When our father

came home from those toxic waste landfills, he requested us to run his water and complained of

back itching and Jules, and Junior had to wash his back and put AMENS powder on the itching.

He had these red spots on his back until death ( Jules & Julius,1979-2014)

Cancer disease was never detested earlier because the disease started out with one cancer

cell after age 47. Those specialized doctors reported that numerous factors do affect their growth,

and the disease's severity. Moreover, the designated cancers impact men bodies differently than

females. According to specialized doctors the cancers impact are different but was deadly in

2015.

The doctors and researchers have reported that Zantac and Toxic waste chemicals are deadly if

ingested or if a person have worked around trash, and toxic chemicals for over30 years. Mr.

Sneed is dead now and is not able to prove to you what his nightmare of battling these aggressive

tumors and ingesting chest burning Zantac medications, but I and my siblings are his mouthpiece

from the dead. Notably, the evidence is in his records on a CD that may have already been

utilized by **Crumps & Davis Law firm.** According to the tolling of the Defendants and

Claimants mentioned earlier in those MDL cases , I was not included or allowed to participate in

the telegraph conferences . (Savage et al., 2022).

Importantly, the doctors reported that those designated cancers have a significant

correlation with what we call a "tumor microenvironmental" surroundings which includes the

multitude of chemical substances secreta from cancer cells, that further affect their growth.

Research and doctors indicated, that Afrcain Americans 'population are mostly impacted by this

cancer than Causcian Americans' population were ( Brian et al.,2015). Here is one of the following websites' were information was obtained to support my clarifications.
https://www.darzalexhcp.com/multiple-myeloma-



1981 -1991    1991 -2001    Chart for Zantac  Higher Dosage 2011-2014  _......_ 4 series

The chart indicating that the longer a person ingested Zantac displayed a significant chance of developing tumors and cancer over decade in Category series 4.

Our detailed **exhibit 1** evidence is in Mr. Julius Alton Sneed's death Certificate. Pictures are for illustration purposes only.

He constantly took this Zantac medication because he was experiencing chronic heart burn. Importantly, he had an ulcer, but was advised by his doctor that this would help him with his chronic heart burn (Sneed et. al., 2023). The purpose of  Zantac was to alleviate chronic heartburn and any plaintiff who drank alcohol and ingested Zantac were at a  high risk for cancer. (Barrett's esophagus, See infra-Section VI (A)(4)(b).  In addition, our father head was completely gray before death and this variable placed him as a cofounder at higher risk for death as opposed to other hair colors .

According to research the color of an individual's hair which is gray causes adverse health risk. Consequences (According to Health  Safety Associations' manual).

According to the following researchers listed below ''a significant strong correlation

relationship to Zantac and myeloma for all five Designated Cancers Dr. Barrett et al., Dr.



Tiernan, Dr. Wang, and          Pictures are for Illustrations only



                                        P

environmental Health Associations. You have evidence of  Mr. Julius A Sneed's CD.

**Analysis & Conclusion & Closing Argument Remarks**

I have come to the final conclusions and based on the detailed information of these case

studies, everyone has been already paid, and it does appear that certain claims such as ours were

overlooked and this is very un-ethical, and corruption in tolling procedures because this case and

other African American plaintiffs were eliminated. In addition, this would explain why every

lawyer would tell me that they were going to take the case, but after viewing our father's

information, less than two days the lawyers would say that they could not take his case. You

cannot tell us that we do not have three cases because Crumps & Davis's Law Firm lied and said

we did not have one, but when he found out that we were going to proceed with our case, he

wrote another letter and denied that he didn't mean we didn't have a case, but there was a disagreement between us. Respectfully, I have always corresponded with his legal assistant, and she advised us that she needed our mailing addresses for the settlement because the case was going to be heard in June of 2022, in front of the HONORBLE JUDGE ROSEBURG ( Who closed our case out before the deadline because she was not informed by (Chairman Ms. Karen K Caldwell). We are requesting the highest amount of funding to be considered for our physical and emotional distress that shall be ordered by a selected jury trial (Savage et al., 2023).

We have not obtained any monies for three years of silence. I motioned to JUDGE ROBIN L.ROSENBURG that we would like to file a motion to proceed without paying fees Informa pauperis "to Civil Court. In addition, since I already paid for the Zantac Case, and I linked them altogether. Could they be considered as three cases because I am basing them on Tolling and the tort law and breach of contract. CRUMPS & DAVIS indicated if we did not have a case we did not have to pay. Since I am the representative of our case and cannot buy a lawyer or get help. Do I have the same rights as an attorney ? It is recorded in the Registry. Pretrial Order 15 at 11. The core issue in this Motion for Clarification was the tolling, and violation of the title 64 Civil Rights Act, that was summarized in the brief. .



SEAL-IT®

Dr. Denise S. Savage
270 Davie Smith St.
Roanoke Rapids, NC 27870

Dr. Denise S. Savage
270 Davie Smith St.
Roanoke Rapids, NC 27870



CLEARED SECURITY

AUG 02 2023

U.S. MARSHALS SERVICE
Atlanta, GA



DR DENISE S SAVAGE
(252) 535-4167
THE UPS STORE #5722
5710 OGEECHEE RD STE 200
SAVANNAH  GA 31405-9516

3 LBS      1 OF 1
SHP WT: 3 LBS
DATE: 31 JUL 2023

SHIP OFFICIAL BUSINESS PENALTY 4 PRIVATE
TO: US COURTS OF APPEALS 11TH CIRCUIT
56 FORSYTH ST NW

ATLANTA  GA 30303-2395



GA 303 9-02

UPS GROUND
TRACKING #: 1Z 706 54V 03 3161 6520

BILLING: P/P

REF #1: AW
REF #2: 5722

ISH 13.00F ZZP 4E0 29.5V 07/2023



United States Court of APPEALS
Eleventh Circuit Office
of The Clerk 56 Forsyth Street N.W.
Atlanta George 30303 Office
Official Business Penalty For Private
Use $300